**DQ FIRE AND EXPLOSION
CONSULTANTS, INC.,**
Petitioner

v.

**SECRETARY OF LABOR and Federal
Mine Safety and Health Review
Commission, Respondents.**

No. 15–1008.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 1, 2015.

Ralph Henry Moore, Patrick Wayne Dennison, Jackson Kelly PLLC, Pittsburgh, PA, for Petitioner.

Sara Lynn Johnson, U.S. Department of Labor (LABR), Arlington, VA, W. Christian Schumann, Esq., Mine Safety &

Health Administration (MSHA), Arlington, VA, John Thomas Sullivan, Mine Safety and Health Review Commission (MSHRC), Washington, DC, for Respondent.

Before: GARLAND, Chief Judge, PILLARD, Circuit Judge, and EDWARDS, Senior Circuit Judge.

## JUDGMENT

PER CURIAM:

This petition for review of orders of the Federal Mine Safety and Health Review Commission ("Commission") was presented to the Court and briefed and argued by counsel. The Court has accorded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the petition for review be denied.

On April 5, 2010, an explosion occurred at Performance Coal's Upper Big Branch Mine–South in West Virginia, killing twenty-nine miners. The Mine Safety and Health Administration ("MSHA") issued a safety order pursuant to section 103(k) of the Federal Mine Safety and Health Act of 1977 ("the Mine Act"), 30 U.S.C. § 813(k), and then commenced an investigation. Performance Coal hired a law firm to assist with its own investigation and, in June 2010, the law firm hired DQ Fire and Explosion Consultants, Inc. ("DQ Fire") to serve as a consultant on behalf of Performance Coal.

MSHA modified the 103(k) order on December 23, 2010. The parties agree that the modified order prohibited Performance Coal's investigation team (including DQ Fire) from entering "Zone 5"—an area within the mine. On January 10, 2011, the DQ Fire team received permission from Stephen Dubina, an electrical engineer with MSHA's Pittsburgh Technical Support Center, to enter Zone 5. It is undisputed that Dubina was not an authorized representative of MSHA with the authority to allow the DQ Fire team to enter Zone 5. Although Dubina accompanied the DQ Fire team into Zone 5 on January 10, and then again on January 11 and 12, the Commission concluded that he did not give the DQ Fire team permission to enter the restricted area on the latter two days. *Sec'y of Labor v. D.Q. Fire & Explosion Consultants, Inc.*, 36 FMSHRC 3090, 3096 (2014) ("*Commission Order*").

On or around January 14, 2011, MSHA issued DQ Fire a citation for violating the 103(k) order on January 11 and 12. 30 U.S.C. § 814(a) (issuance of citations). MSHA assessed a civil penalty, finding that DQ Fire had acted with high negligence. *Id.* § 820(a), (i) (authority to assess civil penalties); 30 C.F.R. § 100.3(a), (d) (same). With respect to January 10, MSHA retroactively modified the 103(k) order to permit DQ Fire to enter Zone 5 for that day only. MSHA explained that, for that day, Dubina may have caused confusion by giving the DQ Fire permission to enter Zone 5.

\*　　\*　　\*

DQ Fire contested the citation before the Commission. *Id.* § 815(d). A hearing before an administrative law judge ("ALJ") followed. *Id.* § 823(d)(1) (proceedings before ALJ). DQ Fire contended that (1) it is not an "operator" subject to citation under the Mine Act, *id.* § 802(d) (definition of "operator"); (2) it did not violate the 103(k) order; (3) MSHA abused its discretion in modifying the 103(k) order for January 10, but not for January 11 and 12; (4) MSHA abused its discretion by maintaining the 103(k) order even after MSHA had allegedly completed its work in Zone 5; and (5) DQ Fire did not act with

high negligence. In an August 29, 2012, order, the ALJ affirmed the citation. *D.Q. Fire & Explosion Consultants, Inc. v. Sec'y of Labor*, 34 FMSHRC 2318 (2012) ("*ALJ Order*"). The Commission declined to review the ALJ's decision with respect to the first four issues, rendering the ALJ's decision a final Commission decision with respect to those matters. 30 U.S.C. § 823(d)(1). On the fifth issue, negligence, the Commission granted review and, on December 19, 2014, issued an order affirming the judgment of the ALJ. *Commission Order*, 36 FMSHRC 3090. DQ Fire timely petitioned this court for review.

This court has jurisdiction over final orders of the Commission. 30 U.S.C. § 816(a)(1). In construing the Mine Act, we "must give effect to the unambiguously expressed intent of Congress." *Sec'y of Labor v. Cannelton Indus. Inc.*, 867 F.2d 1432, 1435 (D.C.Cir.1989) (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). We review the Commission's legal conclusions *de novo* and its factual findings for substantial evidence. *Am. Coal Co. v. FMSHRC*, 796 F.3d 18, 23 (D.C.Cir.2015). It is also well established that "a factfinder's determinations of credibility are entitled to great deference." *Sec'y of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1107 (D.C.Cir.1998). Therefore, it would be an "extraordinary step" for this court to overturn findings based on the credibility of witnesses. *Id.*

\* \* \*

■ DQ Fire first contends that it is not an operator under the Mine Act because, on the days in question, it was not performing the types of "services" covered by the statute. We reject this claim because, "by its terms, [§ 802(d)] extends to *any* independent contractor performing services" at a mine. *Otis Elevator Co. v. Sec'y of Labor*, 921 F.2d 1285, 1290

(D.C.Cir.1990) (citing 30 U.S.C. § 802(d)). DQ Fire clearly meets this definition of an operator under the Mine Act. We need not consider whether exceptions exist for infrequent or *de minimis* contacts, *id.* at 1290 n. 3, as DQ Fire's work was both frequent and essential to Performance Coal's investigation.

■ DQ Fire next argues that the ALJ erred in finding that it violated the 103(k) order. DQ Fire asserts that it informed MSHA in advance of its intentions to enter Zone 5, and it points out that Dubina accompanied the DQ Fire team into the restricted area without indicating that there was a problem. Thus, according to DQ Fire, MSHA had informally modified the 103(k) order so as to allow DQ Fire to enter Zone 5. The ALJ, however, found no "credible evidence" to support an informal modification of the 103(k) order. *ALJ Order*, 34 FMSHRC at 2334. Rather, the ALJ credited a MSHA representative who testified that the strictures of a 103(k) order remain in force unless an operator submits a formal request and receives permission from an authorized MSHA representative to change the order. *Id.* at 2335. Substantial evidence supports this finding.

■ DQ Fire's further contentions that MSHA abused its discretion—both in keeping the 103(k) order in place in January, and also in modifying the order for January 10, but not for January 11 and 12—are without merit. "Section 103(k) grants the Secretary the authority to issue orders the Secretary deems appropriate to ensure the safety of any person in the mine in the event of any accident." *Jim Walter Res., Inc.*, 37 FMSHRC 1868, 2015 WL 5521828, at *3 (Sept. 9, 2015). Pursuant to this authority, it is understood that "103(k) orders are broad, flexible tools" that are "often modif[ied]" to "allow inspectors to impose whatever restrictions or requirements they judge appropriate to

deal with the accident in question." *Am. Coal Co.,* 796 F.3d at 27. Here, the ALJ found that MSHA's actions were within its authority and reasonable. During the dates at issue, Zone 5 was dangerous, and MSHA—contrary to DQ Fire's assertion—had not yet completed its work in the restricted area. *ALJ Order,* 34 FMSHRC at 2337. Furthermore, MSHA reasonably modified the 103(k) order for January 10 because Dubina may have caused confusion by acting as if he had authority to permit the DQ Fire team to enter into Zone 5 on that date. *Id.* Substantial evidence supports these findings.

■ Finally, DQ Fire contends that the Commission erred in affirming the ALJ's high negligence finding. "High negligence exists if '[t]he operator knew or should have known of the violative condition or practice, and there are no mitigating circumstances.'" *Black Beauty Coal Co. v. FMSHRC,* 703 F.3d 553, 561 (D.C.Cir. 2012) (alteration in original) (quoting 30 C.F.R. § 100.3(d)). DQ Fire argues that it believed the 103(k) order could be modified informally and that this belief constitutes a mitigating circumstance. Here, the Commission credited the ALJ's finding that DQ Fire's alleged belief was unreasonable. *Commission Order,* 36 FMSHRC at 3096. The ALJ found that the 103(k) order barring entry to Zone 5 had been in place since December 23, and that any modification of that order required the operator to ask MSHA for modification the night before and receive confirmation of modification before entering any restricted area. *ALJ Order,* 34 FMSHRC at 2335. As a result, we conclude that the Commission properly affirmed the ALJ's high negligence finding.

Pursuant to D.C. Circuit Rule 36(d), this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing. *See* FED. R.APP. P. 41(b); D.C. CIR. R. 41(a)(1).