# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 24, 2019          Decided January 7, 2020

No. 18-1296

WESTERN OILFIELDS SUPPLY COMPANY, DOING BUSINESS AS
RAIN FOR RENT,
PETITIONER

v.

SECRETARY OF LABOR AND FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION,
RESPONDENTS

———

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission

———

*Byron J. Walker* argued the cause for petitioner. With him on the briefs was *Tim Boe*.

*Daniel Colbert*, Attorney, U.S. Department of Labor, argued the cause for respondents. With him on the brief was *Ali A. Beydoun*, Counsel, Appellate Litigation. *John T. Sullivan*, Attorney, Mine Safety and Health Review Commission, and *Andrew R. Tardiff*, Attorney, U.S. Department of Labor, entered appearances.

Before: GARLAND, *Chief Judge*, SRINIVASAN, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  Petitioner Western Oilfields Supply Co., doing business as Rain for Rent, mounts ambitious statutory and constitutional challenges to a $116 fine under the Federal Mine Safety and Health Act of 1977.  We deny the petition for review, taking the opportunity to clear up some confusion about the rights the Act grants mine operators.

I

Under the Mine Act, the Secretary of Labor is responsible for setting health and safety standards to govern the nation's mines and mine operators.  30 U.S.C. §§ 803, 811.  An "operator" is defined to include "any owner . . . or other person who operates . . . a . . . mine or any independent contractor performing services . . . at such mine." 30 U.S.C. § 802(d).  The Act requires the Secretary to make frequent inspections each year, without advance notice, *id.* § 813(a), and authorizes the Secretary to do so without a warrant, *see Donovan v. Dewey*, 452 U.S. 594, 596 (1981).  On the ground, the Secretary's responsibilities are carried out by the Mine Safety and Health Administration (MSHA).  29 U.S.C. § 557a.  If an owner or operator violates a health or safety standard, a MSHA inspector may issue a citation.  30 U.S.C. § 814(a).  The cited party may then challenge that citation before an administrative law judge (ALJ), *see id.* § 815(d); before the Federal Mine Safety and Health Review Commission, in the Commission's discretion, *id.* § 823(d)(2); and ultimately before this court (or the court of appeals for the circuit in which the violation is alleged to have occurred), *id.* § 816(a)(1).

Our cited party, Rain for Rent, rents pumps for use in mines.  Those pumps require maintenance, which it also provides.  On February 8, 2017, Rain for Rent employee Jaime

Tejeda drove a company truck to a quarry operated by Lhoist North America of Arizona, Inc., to perform maintenance on a pump that he had previously installed. After parking the truck, Tejeda went into the mine office to sign in for the day's work.

At that same moment, a MSHA inspector was waiting in the parking lot to meet mine representatives for the second day of an 11-day routine inspection. Seeing the truck rock back and forth, the inspector suspected that Tejeda had neglected to set the parking brake, a violation of a safety standard governing unattended vehicles. *See* 30 C.F.R. § 56.14207. The inspector walked over to the truck and tried to spot the state of the parking brake through the window. When that failed, he opened the door. As he suspected, the parking brake was not set. When Tejeda returned to his truck, he found the inspector photographing the brake and, after a brief exchange, was presented with a citation.

Rain for Rent unsuccessfully raised a storm of objections to the citation in a hearing before an ALJ. The Commission declined to exercise discretionary review, and the ALJ's decision therefore became the final decision of the Commission. *See* 30 U.S.C. § 823(d)(1); Commission Notice (J.A. 123). Thereafter, Rain for Rent petitioned for our review.

II

In this court, Rain for Rent has raised only three objections to the Commission's decision.[1] We consider them below,

---

[1] In particular, Rain for Rent no longer argues that the parking lot was not part of the "mine" within the meaning of the Mine Act, *see Sec'y of Labor v. Rain for Rent*, 40 FMSHRC 1267, 1270-72 (2018) (ALJ), that the truck was not "unattended" while Tejeda was signing in, *id.* at 1280, or that the violation was neither as negligent nor as

"review[ing] the Commission's legal conclusions *de novo*, and its findings of fact for substantial evidence." *Sec'y of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1099 (D.C. Cir. 1998) (citation omitted).

A

First, Rain for Rent maintains that its employee was not within the jurisdiction of the Mine Act at the moment the citation was issued.[2] The Act provides that "each operator of [a] mine . . . shall be subject to the provisions of" the Act, 30 U.S.C. § 803, and defines an "operator" to include "any independent contractor performing services or construction at such mine," *id.* § 802(d). Rain for Rent "does not contest that it was an independent contractor for purposes of this proceeding," Pet'r Br. 41, and stipulated before the ALJ that it had "provided services" to Lhoist, *see Rain for Rent*, 40 FMSHRC at 1268. But it insists that it was not "perform*ing* services" because Tejeda had not yet signed in with the mine office for the day.

We have not had occasion to address what the words "performing services" mean in isolation,[3] and the Secretary's

___

grave as the inspector determined, *id.* at 1280-81.

[2] Or the moment the violation came into being, or the moment the inspection took place -- Rain for Rent is not consistent on this point. *Compare* Pet'r Br. 41 (measuring jurisdiction "at the time the MSHA inspector cited the alleged violation"), *with id.* at 42 (measuring jurisdiction "at the time an alleged violation occurs"), *and id.* at 12 (measuring jurisdiction "[a]t the time the MSHA inspector observed the subject of the Citation"). Those distinctions do not matter here.

[3] We disagree with the Secretary's suggestion that our precedent resolves this case. The Secretary relies in part on a snippet from *DQ Fire & Explosion Consultants, Inc. v. Secretary of Labor*, in which we

regulations only define the term "independent contractor," not the phrase "independent contractor performing services." *See* 30 C.F.R. § 45.2(c). Rain for Rent maintains that, "[b]y its tense, 'perform*ing* services' . . . denotes present, ongoing work." Pet'r Br. 42. Assuming without deciding that Rain for Rent is correct about this, the undisputed record nonetheless shows that Rain for Rent was performing ongoing services for the mine operator, Lhoist. Under the Mine Act, the requirement is that the *contractor* -- not the particular employee on whom the citation is served -- be engaged in work at the mine. And Rain for Rent was.

The ALJ found as follows:

> Prior to the inspection at issue, Lhoist contracted with Rain for Rent . . . to pump an accumulation of rainwater out of the quarry pit. Rain for Rent employee Jaime Tejeda . . . visited the mine site several times to install the pump, perform maintenance

---

affirmed a citation despite the petitioner's contention "that it is not an operator under the Mine Act because, on the days in question, it was not performing the type of 'services' covered by the statute." 632 F. App'x 622, 624 (D.C. Cir. 2015). But that petitioner had not made -- and we were not purporting to respond to -- a temporal argument. Instead, the question was whether the services at issue were sufficiently related to mining. The Secretary also relies on *Otis Elevator Co. v. Secretary of Labor*, in which we rejected an argument that some independent contractors who perform services nevertheless are not operators because they do not perform the right *kind* of services. 921 F.2d 1285, 1289-91 (D.C. Cir. 1990)*.* Again, we did not purport to address the independent meaning (if any) of "performing services," or else we would have had no reason to wonder whether we could grant deference to regulations that did not define the term. *Id.* at 1288 (citing 30 C.F.R. § 45.2(c)).

and repairs, and replace the original pump with a larger model.

*Rain for Rent*, 40 FMSHRC at 1268 (citation omitted). Indeed, Tejeda had previously "[driven] the cited truck onto mine property on multiple occasions" to perform the "same services" he was there to perform on the day of the citation. *Id.* at 1273. And Rain for Rent's rented pump (although still in need of repair) was on-site providing the contractor's continuing service when the events at issue here unfolded. There is therefore no question that, as the ALJ found, "Rain for Rent was performing pumping services for Lhoist" at the time of the inspection. *Id.* at 1274.

Even if we were to narrow our focus to the individual employee, we would come to the same conclusion. Rain for Rent hangs everything on the fact that Tejeda had not yet signed in: It no longer denies, as it did before the ALJ, that Tejeda was already within the boundaries of a "mine" when he parked the truck. *See id.* at 1270-72. Nor does it go so far as to argue that Mine Act jurisdiction did not attach until Tejeda actually touched the pump. *See* Recording of Oral Arg. at 19:40-19:45. Yet, it offers nothing that would distinguish between the walk from truck to office and the walk from office to pump. During each trip, Tejeda was on-site to execute his responsibilities under a contract for services. As the ALJ put it, "Tejeda's work on behalf of Rain for Rent *entailed* entering the Plant office to sign in and make his presence known on the site." 40 FMSHRC at 1274 (emphasis added).

B

We turn next to Rain for Rent's argument that the inspection violated section 103(f) of the Mine Act. That section provides that "a representative of the operator . . . shall be given

an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine . . . for the purpose of aiding such inspection and to participate in pre- or post-inspection conferences held at the mine." 30 U.S.C. § 813(f). Because Tejeda missed the first few minutes of the inspection of his truck, Rain for Rent argues, this "walkaround" right was violated. And while Rain for Rent maintains that the violation, standing alone, merits automatic vacatur of the citation, it also argues that the violation prejudiced its defense to the citation and warrants vacatur (or at least suppression of the evidence) on that ground as well. In particular, Petitioner says, it missed out on its right to refuse the inspection and mount its jurisdictional defense -- its claim about the meaning of "performing services" -- before the search began.

1. Like the ALJ, we do not see a violation. As section 103(f) states, the walkaround right is extended "for the purpose of aiding [the] inspection." *Id.* In other words, the provision gives an operator a chance to provide information that might be mitigating or material -- to argue, for instance, that the brake was in fact set, or that the inspector had misunderstood how it worked. *See Big Ridge, Inc. v. Sec'y of Labor*, 36 FMSHRC 1677, 1735 (2014) (ALJ) (explaining that the representative's role is to "point out hazards, offer justifications, proffer mitigating circumstances, and collect evidence that may support a perspective contrary to the inspector's view at hearing"). But Rain for Rent was not denied that chance because Tejeda returned while the condition of the brake was still plain to see and had an opportunity to say whatever he wanted to the inspector. Rain for Rent points to nothing that it would have done differently if its employee had been present before the door was opened -- other than refuse the inspection entirely.

The problem for Rain for Rent is that the statute does not create such a "right to refuse." Certainly no such right appears

on the face of the Act.  To the contrary, section 103(a) of the Act grants the Secretary a "right of entry to, upon, or through any coal or other mine."  30 U.S.C. § 813(a).  Accordingly, as we said in *Donovan v. Carolina Stalite Co.*, "[r]efusal to admit an authorized representative into a facility for purposes of conducting an inspection pursuant to § 103(a) is a violation of the Act."  734 F.2d 1547, 1549 n.2 (D.C. Cir. 1984).  Moreover, the Act provides that "no advance notice of an inspection shall be provided to any person" (with exceptions not relevant here).  30 U.S.C. § 813(a).  It is hard to understand what good that provision would do if any operator could delay a surprise inspection by blocking it without penalty.

In maintaining that a right to refuse nonetheless exists, Rain for Rent points to section 108 of the Act, which provides: "The Secretary may institute a civil action for relief . . . whenever [a mine] operator or his agent . . . refuses to admit [the Secretary's] representatives to the . . . mine."  *Id.* § 818(a)(1).  Rain for Rent also highlights language from our decision in *Carolina Stalite*.  There, we noted that section 108 proceedings provide a mine operator with "an adequate forum . . . to show that a specific search [was] outside the federal regulatory authority or to seek . . . an order accommodating any unusual privacy interests that [it] might have."  *Carolina Stalite*, 734 F.2d at 1556-57 (quoting *Dewey*, 452 U.S. at 604-05).  We described this as a "right to force MSHA to go to court to gain entry to [a] plant."  *Id.* at 1557.  But in pressing these quotations, Rain for Rent misunderstands both *Carolina Stalite* and the Act.

What we said in *Carolina Stalite* was what the Supreme Court had earlier explained in *Donovan v. Dewey*: section 108 limits the Secretary's *remedies* when a mine operator refuses entry in contravention of the Act.  "The Act prohibits *forcible entries*, and instead requires the Secretary, *when refused entry* onto a mining facility, to file a civil action in federal court to

obtain an injunction against future refusals." *Dewey*, 452 U.S. at 604 (emphasis added).  In other words, if an operator refuses to permit an inspection, the operator has a "right" to require MSHA to go to court to gain entry because Congress did not empower the agency to force its way into the property.  *See Rain for Rent*, 40 FMSHRC at 1276 (rejecting the argument that the Act's "prohibition of forcible entry is . . . necessarily the same as [a] granted right to deny inspection").  But section 108 has no application in a case like this one, where there never was such a refusal.

2.  Even if there had been a violation of Rain for Rent's walkaround rights, we would reject the petitioner's contention that the violation warrants vacatur or suppression.  The statute does not expressly state the consequences of violating section 103(f)'s walkaround right, except to say, somewhat cryptically, that "[c]ompliance with this subsection shall not be a jurisdictional prerequisite to the enforcement of any provision of this chapter."  30 U.S.C. § 813(f).  Neither party has offered a persuasive account of what this language means.[4]

Even in the absence of such a proviso, however, we have interpreted a substantially identical walkaround right in the Occupational Safety and Health Act to require that an employer show "prejudice it suffered as a result of not being represented during the inspection, a requirement imposed by every circuit that has considered the issue."  *Frank Lill & Son, Inc. v. Sec'y of Labor*, 362 F.3d 840, 846 (D.C. Cir. 2004) (internal quotation marks omitted).  Whatever the "not a jurisdictional prerequisite to enforcement" language means, it must at least mean that a harmless violation does not preclude enforcement.  Otherwise,

---

[4] The Commission's last encounter with the question did not produce a majority opinion.  *See Sec'y of Labor v. SCP Invs., LLC*, 31 FMSHRC 821, 821-22 (2009).

compliance with section 103(f) would effectively be an absolute prerequisite, whether denominated as "jurisdictional" or something else.

And as we have noted, Rain for Rent suggests nothing that it would have done differently if its employee had been present the moment the inspector opened the truck's door -- nothing, that is, other than refuse entry based on a claim that the inspector exceeded his jurisdiction under the Mine Act. *See* Pet'r Br. 39. Not only is that defense without merit, *see supra* Part II.A, but witnessing the full inspection would not have improved it. Nor was Rain for Rent's ability to present it to the ALJ or this court impeded in any way.

C

Finally, Rain for Rent maintains that the warrantless inspection of its truck violated the Fourth Amendment because the petitioner was not afforded an opportunity for precompliance review. In support, it cites the Supreme Court's opinion in *Dewey*, which upheld the Mine Act against a Fourth Amendment challenge. But the Court did not hold there, nor has it ever held, that precompliance review is necessary for the constitutionality of warrantless administrative searches in a closely regulated industry like mining.[5]

---

[5] A "closely regulated" industry is one with "such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2455 (2015) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978)). The Court has "identified" mining as one of the few such industries. *Id.* (citing *Dewey*, 452 U.S. 594); *see also Dewey*, 452 U.S. at 603 (finding that "the regulation of mines [that the Act] imposes is sufficiently pervasive and defined that the owner of such a facility cannot help but

*Dewey* states the test for the constitutionality of a warrantless inspection program in such an industry:  there must be a "substantial federal interest" that informs the regulatory scheme; Congress must have reasonably determined "that a system of warrantless inspections was necessary if the law is to be properly enforced and inspection made effective"; and the inspection program, "in terms of the certainty and regularity of its application," must "provide[] a constitutionally adequate substitute for a warrant."  *Dewey*, 452 U.S. at 602-03; *accord City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2456 (2015); *New York v. Burger*, 482 U.S. 691, 702-03 (1987).  *Dewey* held that the Mine Act satisfied all of the elements of that test.  There is no requirement of precompliance review in this framework,[6] nor is there one in the Mine Act itself.

Rain for Rent nevertheless maintains that *Dewey*'s requirement of "certainty and regularity" implies a requirement of precompliance review.  But *Dewey* explained that the Mine Act meets the "certainty and regularity" requirement because: (1) it "requires inspection of all mines and specifically defines the frequency of inspection," and (2) "the [health and safety] standards with which a mine operator is required to comply are all specifically set forth in the Act or in Title 30 of the Code of Federal Regulations."  452 U.S. at 603-04 (emphasis omitted).  Again, the Court did not mention a precompliance review requirement.

---

be aware that he will be subject to effective inspection") (internal quotation marks omitted).

[6] *Accord Zadeh v. Robinson*, 928 F.3d 457, 464 (5th Cir. 2019) ("No opportunity for precompliance review is needed for administrative searches of [closely regulated] industries."); *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280-81 (6th Cir. 2018) (same).

Rain for Rent's argument to the contrary focuses on the paragraph that follows *Dewey*'s discussion of the "certainty and regularity" requirement. There, the Court noted:

> [T]he [Mine] Act provides a specific mechanism for accommodating any special privacy concerns that a specific operator might have. The Act prohibits forcible entries, and instead requires the Secretary, when refused entry onto a mining facility, to file a civil action . . . to obtain an injunction against future refusals.

*Dewey*, 452 U.S. at 604 (citing 30 U.S.C. § 818(a)). *Dewey* is, frankly, ambiguous as to whether this discussion of section 108 is part of its Fourth Amendment analysis, or simply a description of an additional -- but not constitutionally required -- protection afforded by the Mine Act. Subsequent Supreme Court cases do not include anything like it in their descriptions of what is necessary to provide a constitutionally adequate substitute for a warrant in a closely regulated industry.[7]

---

[7] In *Patel*, the Court indicated that "an opportunity for precompliance review" is required for the constitutionality of searches under "general administrative search doctrine," but not for searches under the "more relaxed" test applicable to "closely regulated industries" like mining. 135 S. Ct. at 2454. In *Burger*, the Court explained that the "certainty and regularity" requirement means that a statutory scheme "must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." 482 U.S. at 703. *Burger* held that a warrantless search of an automobile junkyard under a New York regulatory scheme satisfied those requirements. *Id.* at 711-12. It did so without mentioning either a precompliance review requirement or a provision like section 108 of the Mine Act. Indeed, the New York statute did not contain any such requirement or provision. *See Burger*, 482 U.S. at 708-11 (describing

But the relevance of section 108 to *Dewey*'s constitutional analysis is not something we need divine in order to resolve the challenge presently before us. As we explained in Part II.B, section 108 does not create a freestanding right of refusal; it creates only a prohibition against forcible entry when entry is refused. Section 108 has no application here because the Secretary's inspector was not refused entry. And because no feature of the statute that *Dewey* upheld against constitutional attack was violated, Rain for Rent's challenge must fail.[8]

III

For the foregoing reasons, we conclude that Rain for Rent's statutory and constitutional challenges lack merit. Accordingly, its petition for review is

*Denied.*

---

the statute's relevant features in detail).

[8] Rain for Rent also suggests that *Dewey*'s approval of the Mine Act's warrantless inspections was predicated, in part, on the protections provided by the Act's walkaround provision, 30 U.S.C. § 813(f), which we discussed in Part II.B. But that provision is not mentioned anywhere in *Dewey* or any of the subsequent Supreme Court opinions discussed above.